IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL PHOTO GROUP, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>ALLVOICES, INC.,<br><br>    Defendant. | Case No.: C-13-03627 JSC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |

In this copyright infringement case, Defendant Allvoices, Inc. brings a motion to dismiss Plaintiff National Photo Group, LLC's ("NPG") First Amended Complaint ("FAC"). (Dkt. No. 21.) Defendant contends that Plaintiff lacks standing to pursue this case and, even if Plaintiff has standing, the FAC fails to state a claim for relief. After carefully considering the parties' submissions, and having had the benefit of oral argument on January 23, 2014, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss.

**BACKGROUND**

Plaintiff alleges that Defendant, which operates the website allvoices.com, without permission or authorization from Plaintiff, "infring[ed] on Plaintiff's Copyrights" by displaying three photos of the singer Cindy Lauper on its website. (Dkt. No. 19 ¶¶ 13-14.) An exhibit attached to the FAC

shows that two of three photographs are unregistered with the United States Copyright Office. (Dkt. No. 20.) The date of registration for the one registered photo is March 17, 2011.

Plaintiff alleges the following six causes of action against Defendant: 1) direct copyright infringement; 2) contributory copyright infringement; 3) vicarious copyright infringement; 4) inducement of copyright infringement; 5) injunction pursuant to 17 U.S.C. § 502; 6) attorney's fees and costs pursuant to 17 U.S.C. § 505.

## LEGAL STANDARD

Federal courts are courts of limited jurisdiction; thus, the court presumes lack of jurisdiction, and the party seeking to invoke the court's jurisdiction bears the burden of proving that jurisdiction exists. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge a federal court's jurisdiction over the subject matter of the complaint. *See* Fed. R. Civ. P. 12(b) (1).

A complaint will be dismissed if, looking at the complaint as a whole, it appears to lack federal jurisdiction either "facially" or "factually." *Thornhill Pub'g Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). When the complaint is challenged for lack of subject matter jurisdiction on its face, all material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. *NL Indus. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). A Rule 12(b)(1) motion can also "attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rely on affidavits or any other evidence properly before the court." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). "It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *Id.* "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *see also McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) ("[W]hen considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction.").

1    Even if the Court has jurisdiction over the case, a complaint may still be dismissed under
2 Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. A complaint fails to state a claim
3 upon which relief may be granted if the plaintiff fails to allege the "grounds" of his "entitlement to
4 relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must plead "factual
5 content that allows the court to draw the reasonable inference that the defendant is liable for the
6 misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, a court should
7 dismiss a complaint for failure to state a claim if, taking all factual allegations as true, it does not
8 contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 662; *see also Coto*
9 *Settlement v. Eisenberg*, 593 F.3d 1031, 1034 (9th Cir. 2010). "A claim has facial plausibility when
10 the plaintiff pleads factual content that allows the court to draw the reasonable inference that the
11 defendant is liable for the misconduct alleged." *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590
12 F.3d 806, 812 (9th Cir. 2010) (internal quotation marks omitted).

### DISCUSSION

**A.    Standing**

Under the Copyright Act, only the 'legal or beneficial owner of an exclusive right under a copyright' has standing to sue for infringement of that right." *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1169 (9th Cir. 2013) (quoting 17 U.S.C. § 501(b)); *see also Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 890 (9th Cir. 2005) (en banc) (holding that, under Section 501, only a party with an ownership interest has standing to sue).

Defendant moves to dismiss the FAC for lack of subject matter jurisdiction; specifically, lack of standing. Defendant challenges Plaintiff's allegations that it is the owner of the registered copyright at issue, asserting in its motion that publicly available records show that Ben Evenstad (purportedly NPG's owner) is the registered owner of the photo. (*See* Dkt. No. 22-1.) In its opposition, Plaintiff contends that Mr. Evestad (NPG's president) assigned "the entire right, title and interest in the copyright to NPG." (Dkt. No. 31 at 5.)

The Assignment Agreement, which was executed on April 5, 2012, states that NPG applied for copyright protection for several dozen photographs, including the one registered photograph at issue here, but "due to a clerical error, each of the Works was inadvertently registered to Evenstad

3

personally, instead of NPG." (Dkt. No. 32-1.) "[I]n order to correct this error," Evenstad and NPG entered into the Assignment Agreement, which purports to assign

> the full, worldwide copyright and all other rights in the Works from Evenstad to NPG.
>
> By executing this Assignment, the entire right, title, and interest in and to the copyright in the Works is hereby irrevocably assigned by Evenstad to NPG. NPG shall have sole rights of distribution or publication of the Works in all forms and media, or by any means, now known or later developed.

(*Id.*) The Assignment Agreement further states: "For clarification, while this Assignment is dated April 5, 2012, the Assignment is effective, and all transfers reference in this Agreement were made for each of the Works as of the date each was registered with the United States Copyright Office, as indicated in Exhibit A." (*Id.*)

Defendant maintains that the Assignment Agreement is insufficient to establish Defendant's standing to pursue this action because "the assignment contains no express agreement of causes of action that accrued before April 5, 2012." (Dkt. No. 37 at 1 (citing *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991).) Defendant asserts that this omission is significant because it "qualified for immunity from liability for copyright infringement under Section 512(c) of the Digital Millennium Copyright Act ('DMCA') no later than March 31, 2011, the date on which its 'designation of agent' filing was received by the Copyright Office." (*Id.*) Thus, according to Defendant, without an express assignment of accrued causes of action, the April 5, 2012 assignment does not cover Defendant's alleged infringing activity that predates the March 31, 2011 DMCA filing. The Court is not persuaded.

Transferring copyright ownership requires a writing. 17 U.S.C. § 204(a) ("A transfer of copyright ownership . . . is not valid unless . . . in writing."). "No magic words must be included in the document," which "doesn't have to be the Magna Carta; a one-line pro forma statement will do." *Radio Television Espanola S.A. v. New World Entm't Ltd.*, 183 F.3d 922, 927 (9th Cir. 1999) (citations omitted); *see also Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962, 973 (N.D. Cal. 2013). "Rather, the parties' intent as evidenced by the writing must demonstrate a transfer of the copyright." *Radio Television*, 183 F.3d at 927. Further, a written memorandum of a previous oral or written conveyance satisfies Section 204(a). *See Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d

4

1146, 1156 (9th Cir. 2010) (explaining that "an earlier oral assignment can be confirmed later in a writing"); *Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1428–29 (9th Cir. 1996) (holding that a writing dated more than fourteen years after the oral transfer was sufficient to establish transfer of copyright ownership).

Defendant's argument ignores the intention of the parties as evidenced in the Assignment Agreement. Given that the Ninth Circuit has directed that "[n]o magic words" need to be used in the assignment and that the parties' intent as evidenced in the writing should control, *Radio Television*, 183 F.3d at 927, the Court is not persuaded that the assignment's failure to use such words as "accrued causes of action" is dispositive. Rather, a review of the Assignment Agreement reveals that the parties likely intended to transfer accrued causes of action, as well as ownership of the copyright. As Evenstad and NPG plainly state in the agreement, Evenstad—NPG's President—was never supposed to be the registered owner of the copyright; thus, the April 5, 2012 assignment was intended to correct the clerical error that resulted in Evenstad, rather than his company, as the registered owner. It makes little sense for Evenstad to withhold from NPG accrued causes of action that he states should have been in NPG's name all along. Further, the parties' statement that "the Assignment is effective, and all transfers reference in this Agreement were made for each of the Works as of the date each was registered with the United States Copyright Office" evidences that the parties intended to transfer *all* rights accrued since it was registered on March 17, 2011. (Dkt. No. 32-1.) Such rights would include accrued causes of action.

While Defendant cites an opinion from the Second Circuit Court of Appeals for the proposition that "if the accrued causes of action are not expressly included in the assignment, the assignee will not be able to prosecute them," *ABKCO Music, Inc.*, 944 F.2d at 980, this rule has not been adopted by the Ninth Circuit and no district court in this Circuit that has cited the rule has explained why it should exist. *See, e.g.*, *Co-opportunities, Inc. v. National Broadcasting Co., Inc.*, 510 F. Supp. 43, 46 (N.D. Cal. 1981); *Giddings v. Vision House Prod., Inc.*, 584 F. Supp. 2d 1222, 1229 (D.Ariz. 2008). The Court disagrees with Defendant that the Ninth Circuit in *Silvers* endorsed *ABKCO*'s particular holding regarding an express assignment of accrued claims. The *Silvers* court, in concluding that an accrued cause of action cannot be assigned without also assigning an ownership

5

interest in the copyright itself, simply followed *ABKCO*'s separate holding that a party with no ownership interest has no standing to sue. 402 F.3d at 890. *Silvers* made no mention of whether an assignment of accrued rights must be express.

Further, while the assignment language the *ABKCO* court found sufficient to transfer accrued causes of action is more straightforward than that at issue here, it is not apparent to the Court that the language in the Assignment Agreement highlighted above is so dissimilar substantively as to warrant a different result. *Compare ABKCO*, 944 F.2d at 980 ("Any and all rights assertable under copyright against the Infringing Composition in any part of the world which may have heretofore arisen or which may hereafter arise.") *with* (Dkt. No. 32-1 ("For clarification, while this Assignment is dated April 5, 2012, the Assignment is effective, and all transfers reference in this Agreement were made for each of the Works as of the date each was registered with the United States Copyright Office.")); *see also Nat'l Council of Young Israel, Inc. v. Feit Co., Inc.*, 347 F. Supp. 1293, 1295 n.3 (D.C.N.Y. 1972) (holding that "comprehensive and unrestricted conveyance" of a company's property was sufficient to include the existing causes of action for infringement of copyright, even though the assignment did not expressly mention accrued causes of action). In other words, the Assignment Agreement here did expressly assign accrued causes of action.

At the hearing, Defendant argued that the requirement for an express assignment of accrued causes of action exists because a basic assignment of "all rights, title, and interest" in a copyright includes only the exclusive rights listed in 17 U.S.C. § 106, and an accrued cause of action is not an exclusive right; thus, according to Defendant, an express assignment of that right is necessary since it is not automatically included in a copyright assignment. It does not follow, however, that parties to an assignment agreement must contain magic words in assigning accrued causes of action. Looking to the parties' intent as evidenced in the writing is not in conflict with the principal that accrued causes of action are not included in the bundle of rights given upon a bare copyright assignment. As explained above, while there is no express mention of accrued causes of action, the parties' intent to remedy a mistake and place NPG in Evenstad's shoes as of the date of registration expresses an intent to assign causes of action that accrued at least since the date of registration—in addition to assigning copyright ownership and the exclusive rights thereto listed in Section 106.

6

Defendant also contends that Plaintiff does not have standing to assert infringement claims in regards to the unregistered photographs because the Assignment Agreement assigns only Evenstad's registered photographs. This argument, however, is premised on the belief that Evenstad, rather than NPG, owns the unregistered works. If Evenstad does not, or did not, own the unregistered photos, it is not surprising that they were not included in the assignment. Because Defendant has not put forward any evidence contradicting Plaintiff's allegation—which must be taken as true—that it owns the unregistered photographs, Plaintiff cannot be faulted for failing to "point to any document," (Dkt. No. 37 at 5), evidencing such ownership. *See St. Clair*, 880 F.2d at 201.

Defendant's motion to dismiss the FAC for lack of subject matter jurisdiction is accordingly DENIED.

**B. Applicability of the DMCA**

The Digital Millennium Copyright Act ("DMCA") provides a safe harbor from copyright infringement liability for service providers who meet certain threshold requirements. *See* 17 U.S.C. § 512. As noted above, Defendant contends that it falls within DMCA protection as of March 31, 2011, and Plaintiff never complied with DMCA's requirements necessary to eliminate that protection. However, given the Court's conclusion above in regards to standing to bring accrued causes of action, Plaintiff's claims predate Defendant's DMCA protection since Defendant's allegedly infringing activity began a number of weeks or months prior to Defendant's DMCA registration. Defendant conceded as much at the hearing on the motion.

The Court notes that it remains unresolved whether Defendant's DMCA registration cuts off its copyright infringement liability; that is, whether Defendant's potential liability in this case is limited to the time between when the copyrighted photos were posted on Defendant's website and March 31, 2011, the date Defendant asserts its DMCA protection commenced. The parties have yet to present this issue to the Court.

//
//
//
//

### C. The Unregistered Photographs

Defendant contends that Plaintiff's FAC fails to the extent it seeks to bring infringement claims for the two unregistered photographs.[1] Except under certain exceptions that are not alleged here, 17 U.S.C. Section 411(a) requires that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim shall have been made in accordance with this title." The registration requirement is not jurisdictional, but it is a necessary element of a copyright infringement claim. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010). Despite this requirement, Plaintiff's written submissions contend that the Court should not dismiss Plaintiff's claims regarding the unregistered photographs because the FAC includes at least one claim concerning a registered photograph. Plaintiff cites *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) for the proposition that "[t]his Court has jurisdiction to issue an order that covers both the registered as well as the unregistered works." (Dkt. No. 31 at 3.)

At the hearing, Plaintiff maintained that the Court's injunction order, if any, may cover unregistered as well as registered works; however, Plaintiff acknowledged that his FAC does not otherwise state a claim as to the unregistered works since they are unregistered. While *Muchnick* does not displace *Perfect 10*'s holding that any injunction order could cover unregistered as well as registered works, *Muchnick* does preclude claims based on the infringement of unregistered works. Defendant's motion to dismiss claims regarding the unregistered works is accordingly GRANTED with leave to amend.[2]

### D. The Individual Claims

#### 1. Direct Infringement

To state a prima facie case of direct copyright infringement, a plaintiff must show that (1) it owns the copyright for the allegedly infringed materials and (2) the defendant violated at least one of

---

[1] As Defendant points out, although Plaintiff asserts that there are two separate, unregistered photos at issue, the exhibit attached to the FAC appears to show that the two photos are identical. In any event, the claims for each of the photographs fail or survive for the same reasons.

[2] Plaintiff represented at the hearing that it is in the process of registering the unregistered works and would include facts alleging as much in an amended complaint.

8

the exclusive rights listed in Section 106 of the Copyright Act. 17 U.S.C. § 106; *see also Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1159 (9th Cir. 2007).

Defendant argues that Plaintiff's claim for direct infringement fails because Plaintiff fails to allege facts demonstrating that Defendant engaged in "volitional conduct." (Dkt. No. 21 at 6.) Defendant contends that this volitional conduct requires Plaintiff to allege that Defendant "*directly caused* the infringement to take place." (*Id.* (quoting *Perfect 10, Inc. v. Giganews, Inc.*, 2013 WL 2109963, at *7 (C.D. Cal. Mar. 8, 2013)).) Even if the volitional conduct requirement applies,[3] the Court has little difficulty concluding that, taking all Plaintiff's allegations as true and viewing them in the light most favorable to Plaintiff, the FAC adequately alleges such volitional conduct. Plaintiff alleges that Defendant reproduced and displayed the photographs on its website. (*See* Dkt. No. 19 ¶ 23.) Screenshot images and URL addresses attached to the FAC appear to show that the photographs were displayed on Defendant's website. Such allegations are sufficient to allege that Defendant directly caused the infringement to take place. *See Perfect 10*, 508 F.3d at 1160 (affirming district court's order preliminarily enjoining Google's alleged direct infringement where Google's computers stored thumbnail versions of plaintiff's copyrighted images and "communicate[d]" copies of those thumbnails to Google's users).

Defendant's arguments to the contrary are premised on its assertion that the person or entity who actually posted the photos onto allvoices.com is a "third party," not Defendant. However, because Defendant identifies no allegations in the FAC supporting this contention, Defendant's argument is inappropriate for a Rule 12(b)(6) motion. *Giganews* is distinguishable because the plaintiff there alleged that the content, including the alleged infringing content, on the defendant's website was posted by the website's users and subscribers, not by the defendant itself. 2013 WL 2109963, at *2. No such allegations exist here. Thus, whether the conduct of Defendant's "citizen journalis[ts]" who posted the photographs can be attributed to Defendant is not a question that is appropriate for resolution on a motion to dismiss. (Dkt. No. 21 at 6.)

Defendant's motion to dismiss Plaintiff's direct infringement claim is accordingly DENIED.

---

[3] As discussed in *Giganews*, this requirement has not been adopted by the Ninth Circuit and courts within this Circuit are divided on whether the requirement is valid. 2013 WL 2109963, at *6-7. The parties here do not address the split within the district courts.

9

### 2. Contributory Copyright Infringement

As a threshold matter, Defendant contends that Plaintiff fails to state a claim for any secondary liability because the FAC fails to allege any infringing activity of a third party. "All theories of secondary liability for copyright and trademark infringement require some underlying direct infringement by a third party." *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 591 F. Supp. 2d 1098, 1104 (N.D. Cal. 2008). Plaintiff's FAC adequately alleges the presence of third-party infringers. Plaintiff alleges that "[i]ndividuals using the Website . . . are directly infringing Plaintiff's copyrights, by, for example, creating unauthorized reproductions of Plaintiff's copyrighted works and distributing copies of such works." (Dkt. No. 19 ¶ 35.) Plaintiff further alleges that this third-party infringing is facilitated by a user's ability to share the infringing content through social media platforms such as Facebook, Instagram, and Twitter. (*Id.* at ¶ 36.) It is plausible to infer that the infringing photographs emanating from Defendant's website were reproduced by third parties.

Turning to the other requirements of the claim, a defendant who has not directly infringed on a copyright may still be liable for contributory infringement if the defendant 1) has knowledge of another's infringing conduct and 2) induces, causes, or materially contributes to that conduct. *Perfect 10*, 508 F.3d at 1171. In the context of cyberspace, the Ninth Circuit has held that "a computer system operator can be held contributorily liable if it 'has *actual* knowledge that *specific* infringing material is available using its system,' [*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001)], and can 'take simple measures to prevent further damage' to copyrighted work, [citation], yet continues to provide access to infringing works." *Id.* at 1172; *but see Napster*, 239 F.3d at 1020 ("Contributory liability requires that the secondary infringer know *or have reason to know* of direct infringement." (emphasis added) (internal quotation marks omitted)).

Under its claim for contributory copyright infringement, Plaintiff alleges that "Defendant has caused enabled, facilitated and materially contributed to the infringement complained of herein by, providing the tools and instruction for infringement via their Website and has directly and indirectly promoted the infringement and refused to exercise their ability to stop the infringement made possible by their distribution." (Dkt. No. 19 ¶ 27.) Defendant argues that Plaintiff's allegations are

insufficient to support its contributory infringement claim since they are mere recitations of the elements of the claim. The Court agrees.

Plaintiff identifies no allegations in its FAC that plausibly suggest that Defendant had knowledge of any third-party infringing activity on its website. Even if, as Plaintiff asserts, Defendant is liable if it had mere constructive knowledge of such infringing activity, Plaintiff's FAC still fails. There are no alleged facts plausibly suggesting that Defendant was on any notice, constructive or otherwise, of the infringing photographs on its website. That Defendant operates a website where infringing content may be posted is not, by itself, enough to state a claim for contributory infringement. *See Napster*, 239 F.3d at 1020-21 (refusing to "impute the requisite level of knowledge to Napster merely because peer-to-peer file sharing technology may be used to infringe plaintiffs' copyrights").

Further, Plaintiff fails to allege what "simple measures" Defendant failed to take to prevent further damage to the copyrighted photographs. *Perfect 10*, 508 F.3d at 1172.

Defendant's motion to dismiss Plaintiff's claim for contributory infringement is accordingly GRANTED with leave to amend.

### 3. Inducement of Copyright Infringement

An inducement of copyright infringement claim has four elements: "(1) the distribution of a device or product, (2) acts of infringement, (3) an object of promoting its use to infringe copyright, and (4) causation." *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1032 (9th Cir. 2013). Defendant's motion to dismiss focuses solely on the third element, an element which the Ninth Circuit has described as "usually dispositive." *Id.* at 1034.

Plaintiff alleges that

> Defendant has induced and continue to induce infringement by, for example, providing technology on the Websites to download and/or forward an image to such social media providers such as Facebook, Instagram, and Twitter and/or failing to block or diminish access to infringing material even though there are technological means to do so that are known to Defendant.

(Dkt. No. 19 ¶ 36.) These allegations fail to state a claim for inducement of infringement as a matter of law. The Supreme Court has described the improper object prong as follows:

> We are, of course, mindful of the need to keep from trenching on regular commerce or discouraging the development of technologies with lawful and unlawful potential. Accordingly, just as *Sony* did not find intentional inducement despite the knowledge of the [Betamax] manufacturer that its device could be used to infringe, mere knowledge of infringing potential or of actual infringing uses would not be enough here to subject a distributor to liability. Nor would ordinary acts incident to product distribution, such as offering customers technical support or product updates, support liability in themselves. The inducement rule, instead, premises liability on purposeful, culpable expression and conduct, and thus does nothing to compromise legitimate commerce or discourage innovation having a lawful promise.

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 937 (2005) (citation omitted). From this passage, the Ninth Circuit concluded that "the improper object must be plain and must be affirmatively communicated through words or actions." *Fung*, 710 F.3d at 1034. Plaintiff fails to explain why the ability to use social media to share news stories featuring the allegedly infringing photos—in other words, "ordinary acts incident to" Defendant's operation of its website, *Grokster*, 545 U.S. at 937—constitutes an improper object. Given that Plaintiff cites no case in support of its purported claim, Defendant's motion to dismiss Plaintiff's inducement of infringement claim is GRANTED with leave to amend.

### 4. Vicarious Copyright Infringement

One "infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *Grokster*, 545 U.S. at 930. "[T]o succeed in imposing vicarious liability, a plaintiff must establish that the defendant exercises the requisite control over the direct infringer and that the defendant derives a direct financial benefit from the direct infringement." *Perfect 10*, 508 F.3d at 1173. The "control" element of the vicarious liability test examines the defendant's "right and ability to supervise the direct infringer." *Grokster*, 545 U.S. at 930 n.9. "Thus, under *Grokster*, a defendant exercises control over a direct infringer when he has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *Perfect 10*, 508 F.3d at 1173.

Plaintiff's FAC fails to adequately allege a claim for vicarious copyright infringement. Regarding the control prong, Plaintiff's FAC simply parrots the elements of the claim without providing any factual allegations that would make such a claim plausible. The absence of such allegations requires dismissal. *See Iqbal*, 556 U.S. at 678 ("[A] pleading that offers 'labels and

1 conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'") (quoting
2 *Twombly*, 550 U.S. at 555).

3    Defendant also asserts that Plaintiff's claim fails to adequately allege that Defendant derived a
4 direct financial benefit from the direct infringement. "Financial benefit exists where the availability
5 of infringing material acts as a 'draw' for customers." *Napster*, 239 F.3d at 1023 (internal quotation
6 marks omitted). "The essential aspect of the 'direct financial benefit' inquiry is whether there is a
7 causal relationship between the infringing activity and any financial benefit a defendant reaps,
8 regardless of *how substantial* the benefit is in proportion to a defendant's overall profits." *Ellison v.*
9 *Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004). Plaintiff's FAC alleges that Defendant received a
10 direct financial benefit from the infringement since "the Websites had increased traffic and, in turn,
11 realized an increase their [sic] advertising revenues and/or merchandise sales." (Dkt. No. 19 ¶ 19.)
12 Plaintiff further asserts that the exhibit attached to the FAC shows advertisements displayed near the
13 infringing photographs, presumably suggesting that Defendant benefits by the infringing photos'
14 ability to lure users to the website where the users will, in some degree of likelihood, click on the
15 advertisement thereby generating revenue for Defendant.

16    Although Plaintiff cites no case in support of his advertising revenue allegations, Defendant
17 cites no case that persuasively states that Plaintiff's advertising allegations fail as a matter of law. *Cf.*
18 *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 500 (E.D. Pa. 2006) (finding as "vague" and
19 "conclusory" plaintiff's allegation that "Google's advertising revenue is directly related to the number
20 of Google users and that the number of users is dependent directly on Google's facilitation of and
21 participation in the alleged infringement" (internal quotation marks omitted)); *Sarvis v. Polyvore, Inc.*,
22 2013 WL 4056208, at *9-10 (D. Ma. Aug. 9, 2013) (concluding that pro se plaintiff's assertions made
23 in his opposition to a motion to dismiss—namely, that defendant's financial interest is demonstrated
24 by "adverting [sic] on the contest page, from fees it charges its advertising underwriter (e.g.Samsung),
25 and because its contest are User base draws"—do not constitute a plausible claim that defendant
26 benefited financially from the infringement); *Perfect 10, Inc. v. Google, Inc.*, 2010 WL 9479060, at
27 *9 (C.D. Cal. July 30, 2010) (concluding that plaintiff failed to provide evidence showing ads next to
28 infringing works, and stating that even if plaintiff produced such evidence, "it is unclear that such

13

evidence would qualify as the *direct* financial benefit necessary to impose vicarious liability"); *Ellison*, 357 F.3d at 1079 (including no discussion of online advertising revenue and concluding on a summary judgment motion that "[w]hile a causal relationship might exist between AOL's profits from subscriptions and the infringing activity taking place on its USENET servers, Ellison has not offered enough evidence for a reasonable juror so to conclude").

While the Court does not dismiss Plaintiff's claim on the basis that the FAC fails to adequately allege a direct financial benefit, the Court GRANTS, with leave to amend, Defendant's motion to dismiss Plaintiff's vicarious infringement claim based on Plaintiff's inadequate allegations as to the control prong.

## CONCLUSION

For the reasons explained above, the Court GRANTS, with leave to amend, Defendant's motion to dismiss Plaintiff's second, third, and fourth causes of action, as well as Plaintiff's claims regarding the unregistered photographs. Defendant's motion is DENIED as to Plaintiff's first cause of action for direct infringement. Finally, the Court DENIES Defendant's motion to dismiss for lack of subject matter jurisdiction.

A second amended complaint, if any, shall be filed within 21 days of this Order.

IT IS SO ORDERED.

Dated: January 24, 2014

JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE

14